**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **JIMMY LEE MOOREFIELD, 913478,** § | |
| Petitioner, § | |
| § | No. 3:03-CV-2966-D |
| v. § | |
| § | |
| **DOUGLAS DRETKE, Director, TDCJ-CID,** § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Background**

On September 11, 1999, Petitioner was convicted of aggravated sexual assault of a child under the age of fourteen. *State of Texas v. Jimmy Lee Moorefield*, F-0000159-RT (283rd Jud. Dist. Ct., Dallas County, Tex., Sept. 11, 1999). The conviction was enhanced by a prior felony conviction for indecency with a child. Petitioner received an automatic life sentence. On March 28, 2002, the Thirteenth Court of Appeals affirmed the conviction. *Moorefield v. State*, No. 13-00-168-CR (Tex. App.– Corpus Christi, March 28, 2002, no pet.). Petitioner did not file a petition for discretionary review.

On August 28, 2003, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Moorefield*, Application No. 57,482-01. On December 3, 2003, the Court of Criminal Appeals

denied the petition without written order on the findings of the trial court. *Id*. at cover.

On December 9, 2003, Petitioner filed this federal petition. Petitioner argues: (1) he received ineffective assistance of counsel; (2) the trial court committed misconduct; and (3) the prosecutor committed misconduct.

## II. Discussion

**1.      Statute of Limitations**

Respondent argues the petition is time-barred. Petitioner filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the AEDPA governs the present petition. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2068, 138 L. Ed. 2d 481 (1997). The AEDPA establishes a one-year statute of limitations for federal habeas proceedings. *See* Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (1996).

In most cases, the limitations period begins to run when the judgment becomes final after direct appeal or the time for seeking such review has expired. *See* 28 U.S.C. § 2244(d)(1)(A).[1]

---

[1] The statute provides that the limitations period shall run from the latest of--

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking direct review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the

This period is tolled while a properly filed motion for state post-conviction relief or other collateral review is pending. *Id.* § 2244(d)(2). The one-year limitations period is also subject to equitable tolling in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).

On March 28, 2002, the Thirteenth Court of Appeals affirmed Petitioner's conviction. On April 17, 2002, Petitioner filed a motion for an extension of time to file a motion for rehearing. (Resp. Ex. B). On May 7, 2002, the court granted Petitioner until June 11, 2002, to file his motion for rehearing. *Id.* On June 13, 2002, Petitioner filed a second motion for extension of time to file a motion for rehearing. (Resp. Ex. C). On July 26, 2002, the court granted Petitioner until August 10, 2002, to file his motion for rehearing. *Id.* On August 15, 2002, Petitioner filed a third motion for extension of time to file a motion for rehearing. (Resp. Ex. D). On August 29, 2002, the court denied Petitioner's motion. *Id.* Petitioner did not file a petition for discretionary review. His conviction therefore became final thirty days later, on September 30, 2002.[2] *See* Tex. R. App. P. 68.2 (PDR must be filed within 30 days after court of appeals renders judgment or overrules motion for rehearing); *see also Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (state conviction becomes final for limitations purposes when time for seeking further direct review expires, regardless of when mandate issues). Petitioner then had one year, or until September 30, 2003, to file his federal petition.

The filing of a state application for habeas corpus tolls the statute of limitations. *See* 28

---

exercise of due diligence.

28 U.S.C. § 2244(d)(1).

[2]Thirty days from August 29, 2002, is Saturday, September 28, 2002. Pursuant to Tex. R. App. P. 4(a), the PDR was due on Monday, September 30, 2002.

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge** Page -3-

U.S.C. § 2244 (d)(2). On August 28, 2003, Petitioner filed a state petition for writ of habeas corpus. This petition tolled the limitations period until December 3, 2003, when the Court of Criminal Appeals denied the petition. Petitioner then had thirty-four days remaining on the limitations period. Petitioner filed his federal petition six days later, on December 9, 2003. His petition is therefore timely.

Respondent argues the petition is barred by limitations. Respondent states that because the court of appeals denied Petitioner's third motion for extension of time, the limitations began to run on August 12, 2002 – the date when Petitioner's second motion for extension of time expired.[3] Even if the Court were to accept Respondent's argument that the limitations period started to run on August 12, 2002, the petition is timely. Pursuant to Texas Rule of Appellate Procedure 68.2, Petitioner is granted thirty days from the date the last timely motion for rehearing was overruled to file a petition for discretionary review.[4] Thirty days from August 12, 2002, is September 11, 2002. Under this calculation, the limitations period would have expired September 11, 2003. The limitations period was tolled during the pendency of Petitioner's state habeas writ, from August 28, 2003, until December 3, 2003. On December 3, 2003, Petitioner had fifteen days remaining on the limitations period. He filed his petition six days later on December 9, 2003. The petition is therefore timely.

**2.    Factual Background**

The complaining witness, K.T, testified that Petitioner, her stepfather, sexually assaulted

---

[3] Petitioner was granted until August 10, 2002, to file his motion for reconsideration. August 10, 2002, was a Saturday. The motion was therefore due August 12, 2002. *See* Tex. R. App. P. 4(a).

[4] Tex. R. App. P. 68.2(a) states: "The petition must be filed within 30 days after either the day the court of appeals' judgment was rendered or the day the last timely motion for rehearing was overruled by the court of appeals."

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -4-

her when she was in the sixth grade. (Trial Tr. Vol. 5 at 18-28.) One day, after her sister Jessica left to attend a birthday party, Petitioner played strip poker with K.T. and made her watch "sexual movies." *(Id.* at 22-23.) No one else was in the house. *(Id.)* K.T. testified that Petitioner gave her alcohol to drink. *(Id.* at 25, 54-55.) After K.T. and Petitioner were undressed as a result of the strip poker, K.T. went to her bedroom to get dressed. *(Id.* at 22-25). She sat down on her bed and Petitioner entered the room and lay on top of her. *(Id.* at 22, 25.) K.T. testified that Petitioner ejaculated on her stomach. *(Id.* at 25.) Petitioner asked K.T. if she wanted him to "make her come" and she told him no. *(Id.* at 26.)

K.T. testified that Petitioner touched her chest and licked her "private." *(Id.* at 27.) K.T. testified that she was scared when this occurred. *(Id.* at 28.) She stated that she tried to escape from the house, but Petitioner hit her. *(Id.* at 23, 28.) She tried to call an ambulance, but Petitioner kept hanging up the phone. *(Id.* at 29.) She then tried to call her friend's mom, Rebecca, but Petitioner kept hanging up the phone. *(Id.* at 29.) She finally reached Rebecca, and Rebecca told her to come over to their house. *(Id.* at 30.) She was crying when she talked to Rebecca. *(Id.)* K.T. testified that Petitioner kept telling her not to tell anyone what happened, and she finally told him she would not tell so he would take her to Rebecca's house. *(Id.)*

After they arrived at Rebecca's house, Petitioner informed Rebecca that K.T. might say he did "something to her." *(Id.* at 75.) K.T. did, in fact, tell Rebecca and Rebecca's husband about the sexual assault. *(Id.* at 31.) Rebecca testified that K.T. appeared extremely upset. *(Id.* at 67-68, 73.)

Rebecca testified that on the day in question, she received several hang up calls followed by a call from K.T. *(Id.* at 68.) She described K.T.'s demeanor as hysterical. *(Id.)* K.T. arrived

at Rebecca's house about fifteen minutes after the phone call. (*Id*. at 72-73.) Rebecca testified that she noticed bruises on K.T.'s face and arms and called 911. (*Id*. at 76.) A paramedic who responded also testified that she noticed a big bruise and big bump on K.T.'s face. (*Id.* at 103.) K.T. told the paramedic that Petitioner gave her Mad Dog to drink, hit her and licked her private part. (*Id*. at 31, 107-09.)

K.T.'s mother testified that she initially did not believe K.T., but later she began to believe K.T.'s story. (*Id.* at 119.)

Petitioner provided a statement to the police which was read into the record at trial. In his statement, Petitioner denied that any abuse occurred. (*Id.* at 137-38.) Petitioner's statement explained that on the date of the incident, he was looking at a burn on K.T.'s upper thigh when K.T. pulled her panties up higher than she should have. (*Id.* at 138.) He stated that K.T. had tried many times to get him to look at her, but that either he or her mother would tell her to "get some clothes on." (*Id.*)

**3.    Standard of Review**

The pertinent terms AEDPA state:

(d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ

of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United states Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996. *See Lindh*, 521 U.S. at 336. The petition in this case is subject to review under the AEDPA.

Additionally, under 28 U.S.C. § 2254(d), a presumption of correctness must be accorded findings of fact made by a state habeas court if supported by the record. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citation omitted).

**4.      Ineffective Assistance of Counsel**

Petitioner claims his counsel was ineffective because his counsel: (1) failed to investigate K.T.'s past behavior; (2) failed to investigate K.T.'s school records; (3) failed to investigate Petitioner's alibi defense; (3) failed to object to the introduction of letters Petitioner wrote to his wife; (4) failed to object to the introduction of a video-tape; and (5) failed to obtain an expert witness on child abuse.

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**(a) Failure to investigate**

To establish that counsel was ineffective for a failure to investigate, the petitioner must do more than merely allege a failure to investigate – he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

(i) K.T.'s past behavior

Petitioner argues his counsel was ineffective because she failed to adequately investigate K.T.'s past behavior. He states that K.T. previously fabricated a claim that Petitioner touched her sexually.

The record shows that defense counsel retained an investigator for Petitioner's case. *Ex*

*parte Moorefield*, at 49.  At trial, Petitioner's counsel questioned K.T.'s sister, Jessica, regarding an alleged false claim that K.T. made against Petitioner.  Jessica testified that her mother told her that K.T. made the false claim.  The record states as follows:

| | |
|---|---|
| Defense counsel: | But the two of them [Petitioner and K.T.] had an altercation; is that right? |
| Jessica: | Yes. |
| Defense counsel: | And he spanked her? |
| Jessica: | Yes. |
| Defense counsel: | And then after that, she made an allegation that he had touched her; is that right? |
| Jessica: | Yes. |
| Defense counsel: | And did she then tell that wasn't true? |
| Jessica: | Yes. |
| Defense counsel: | That she had just been angry with [Petitioner]? |
| Jessica: | Yeah. |

(Trial Tr. Vol. 5 at 64-65.)

Additionally, defense counsel questioned Petitioner's step-mother, Ms. Berry, about the incident.  The record shows as follows:

| | |
|---|---|
| Defense counsel: | And are you familiar with sometime in the past where K.T. had made a false accusation against [Petitioner]? |
| Ms. Berry: | Yes, I am. |
| Defense counsel: | And was that – did that evolve around an incident where he had spanked her and she accused him of sexual touching? |
| Ms. Berry: | Yes. |

| | |
|---|---|
| Defense counsel: | And that was false; is that correct? |
| Ms. Berry: | Yes. |

(*Id.* at 160-61.)

Petitioner has not stated what type of further investigation should have been conducted and what a further investigation would have revealed. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings). Petitioner has failed to show that his counsel failed to perform an adequate investigation. His claims should be denied.

(ii) K.T.'s school records

Petitioner also claims his counsel did not perform an adequate investigation because she failed to obtain K.T.'s school records. He states these records would show K.T. made a false claim of sexual touching against one of her schoolmates.

At trial, defense counsel questioned K.T.'s mother about the incident.

| | |
|---|---|
| Defense counsel: | Theresa, in the letter you wrote [Petitioner] on December 7th, do you remember writing in this letter that there had been a previous incident where [K.T.] had lied at school? |
| Theresa: | What had happened was the little girl and [K.T.] were playing chase. |
| Defense counsel: | Okay. |
| Theresa: | Okay. And the little girl – can I stand up? |
| Defense counsel: | Sure. |
| THE COURT: | Sure. |
| Theresa: | The little girl grabbed [K.T.'s] pants like this, okay. |
| Defense counsel: | And that would be from behind? |

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**        Page -10-

| | |
|---|---|
| Theresa: | Yes. And [K.T.] made the statement that the little girl had put her hand in [K.T.'s] pants. That is putting her hand in [K.T.'s] pants. But I tried to explain to [K.T.] there is a difference in somebody accidentally stepping on your toe and somebody stomping on your toe. |
| Defense counsel: | Did the school require you to have a meeting with this little girl's mother? |
| Theresa: | Yes. |
| Defense counsel: | And at the meeting with this little girl's mother, was that at the school? |
| Theresa: | Yes. |

(*Id.* at 121-23.)

Petitioner has not shown that production of K.T.'s school records, or questioning K.T. regarding this incident, would have produced evidence favorable to the defense. Petitioner's conclusory claims of ineffective assistance of counsel should be denied.

(iii) Petitioner's alibi

Petitioner claims his counsel failed to adequately investigate an alibi defense. Petitioner argues that on the day of the incident, he spent the day traveling to and from the hospital where his wife was a patient. He states the hospital was located "some twenty miles from the location where the incident allegedly occurred." (Pet. at 9.) It appears Petitioner is arguing that because of the travel time to and from the hospital, there was insufficient time to commit the offense. Petitioner provides nothing to support his claim. He does not state the time he left for the hospital or the time he returned. Petitioner's conclusory allegations fail to raise a colorable basis for habeas corpus relief. *See Ross*, 694 F.2d at 1012.

Additionally, K.T.'s sister, Jessica, testified that Petitioner and K.T. were at the house

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge**        Page -11-

alone when she left around 3:00 p.m. to attend a birthday party. (Trial Tr. Vol. 5; p. 61.) K.T.'s friend's mother, Rebecca, testified that when K.T. called her on the day of the incident, Petitioner took the phone away from K.T. (*Id.* at 69.) Rebecca also testified that Petitioner accompanied K.T. to her house that day. (*Id.* at 72.) Further, Petitioner admits he was at home with K.T. on the date of the incident. Petitioner's statement to the police states that he was with K.T. when she showed him a burn on her leg and allegedly "pulled her panties up farther than she should have." (State's Ex. 2.) Petitioner states he then hit K.T. (*Id.*) Petitioner has failed to show his counsel was ineffective for not arguing this alibi defense. Counsel is not required to make frivolous arguments. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

### (b) Failure to object to letters

Petitioner argues his counsel failed to object to the introduction into evidence of letters he wrote to his wife during his pre-trial incarceration. Petitioner argues the letters were inadmissible because they were duplicates. (Pet's. Second Traverse, at 9.) He also argues they were inadmissible because no expert witness testified regarding Petitioner's handwriting.

Petitioner's counsel, however, did object to the introduction of these letters. When the letters were first offered by the state, defense counsel objected on the grounds that a proper predicate had not been established. (Trial Tr., Vol.5 at 59-60.) After the objection, the letters were not admitted through that witness. When the prosecutor later offered the letters through a different witness, defense counsel objected that they had not been properly authenticated, they were not relevant and no proper predicate had been established. (*Id.* at 117.) The court overruled defense counsel's objections and admitted the letters. (*Id.* at 118.) Although Petitioner argues defense counsel should have objected that the letters were duplicates, rather

than originals, he has failed to show the letters were not originals. The prosecutor stated she received the letters from Petitioner's wife and each letter was accompanied by the mailing envelope. (*Id*. at 115, 117-19.)

Finally, although Petitioner argues the handwriting on the letters was not authenticated, Petitioner's wife testified that the letters were in Petitioner's handwriting. (*Id*. at 115-117.) Petitioner has presented no evidence that a handwriting expert would have testified that the letters were not in Petitioner's handwriting. "[H]ypothetical or theoretical testimony will not justify the issuance of a writ . . . ." *See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) (citation omitted). Petitioner's claims should be denied.

### (c) Failure to object to video-tape

Petitioner argues his counsel failed to object to the introduction of a video-tape that was found in a dumpster in front of Petitioner's home. He states the video-tape had no affirmative link to him. He also states the content of the tape was not proved and that the prosecutor improperly implied the tape had a sexual content.

At trial, Officer Meehan testified that K.T. told officers that a destroyed videotape could be found in the dumpster. (Trial Tr. Vol. 5 at 143.) Officer Meehan stated they were not able to recover the contents of the videotape. *Id*. On cross-examination, defense counsel questioned Officer Meehan about the video-tape.

> Defense counsel:   So do you know whether or not this tape belongs to that box?
>
> Officer Meehan:   I have no idea.
>
> Defense counsel:   And can you tell me or read for the jury what the entire narrative is on the front of this box?
>
> Officer Meehan:    It says time sensitive information, for your eyes only, watch this

|  |  |
|---|---|
|  | video immediately to see how you can receive several prizes at no obligation. |
| Defense counsel: | Is there anything on the front of this box or on the back of it or anywhere that looks pornographic to you? |
| Officer Meehan: | No. |

(*Id.* at 147.) Petitioner has not shown that his counsel was deficient by choosing to cross-examine Officer Meehan regarding the video-tape rather than attempting to exclude the tape from evidence. Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

### (d) Failure to obtain expert witness

Petitioner argues his counsel was deficient for failing to obtain an expert witness to testify on Petitioner's behalf. Petitioner states an expert could have showed that K.T.'s statements conflicted, that she lacked details of the incident and that because K.T. made a previous false statement against Petitioner, it is likely that her claims at trial were a fabrication.

The record shows, however, that defense counsel filed a pre-trial motion for appointment of a child abuse expert. (*Ex parte Moorefield*, at 49.) This motion was granted and child abuse expert Lynn Corsi reviewed Petitioner's case. (*Id.*) Defense counsel stated in her state court affidavit that "Ms. Corsi was not called to testify because, after reviewing all of the evidence in the case, she indicated to me that she was not going to be able to testify favorably for Mr. Moorefield." (*Id.*) Petitioner has not shown his counsel was ineffective for failing to retain an expert witness on child abuse. Petitioner's claims should be denied.

Petitioner has failed to show that the state court's decision to deny Petitioner's ineffective assistance of counsel claims was contrary to federal law or was an unreasonable determination of

the facts in light of the evidence. 28 U.S.C. § 2254(d).

## 4. Judicial Misconduct

Petitioner argues the trial court committed misconduct when it: (1) admitted testimony from paramedic Carolyn Hyatt; (2) coached the prosecutor on how to admit Ms. Hyatt's testimony; and (3) ignored objections made by defense counsel.

### (a) Conclusory allegations

Petitioner does not identify any court statements that he alleges were improper coaching. He also does not identify any defense objections that he claims were ignored by the court. Petitioner's conclusory allegations should be denied. *See Ross*, 694 F.2d at 1012.

### (b) Hyatt testimony

Defense counsel objected to Ms. Hyatt as an improper outcry witness. Under Texas Code of Criminal Procedure 38.072 (2)(a)(2), an outcry witness is "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." Defense counsel objected that the proper outcry witness was K.T.'s friend's mother, Rebecca. The Court sustained the objection. (Trial Tr. Vol.5 at 94.)

The prosecutor argued that Hyatt's testimony was admissible as an excited utterance and as a statement for the purpose of medical treatment under Texas Rule of Evidence 803(2) and (4). (*Id*. at 96.) Ms. Hyatt testified that K.T. was crying, excited, scared and "[v]ery, very upset" when she talked to her. (*Id*. at 102-04.) Although Hyatt did not remember what time it was when she saw K.T., it was in the afternoon and was still light outside. (*Id*. at 102; 106.) Hyatt also testified that she was performing a medical assessment of K.T. at the time K.T. made her statements. (*Id.* at 105.) After Hyatt testified to these predicate facts, defense counsel again

objected to testimony regarding any statements by K.T. regarding the incident. The court overruled defense counsel's objection and allowed the testimony.

Petitioner has not cited any authority for his claim that the court committed misconduct by admitting Hyatt's testimony under Tex. R. Evid. 803(2) and (4). Petitioner's claims should be denied.

**5.     Prosecutorial Misconduct**

Petitioner argues the prosecutor committed misconduct when she identified this case as a rape case and thereby inflamed the jury. Although Petitioner does not specify the statement that he is referring to, the Prosecutor did state the following in voir dire:

> Prosecutor:   Now, as far as sexual assault is concerned or aggravated sexual assault, basically we are dealing with rape.

(*Id*. at 71.)

> Sometimes in rape cases people think, well, I would like to see some semen. That may help me figure out who actually did what.

(*Id*. at 73.)

> [I]f we were to prove our case to you through only one witness because obviously if we are dealing with a rape case all of you would agree there probably aren't going to be other witnesses who can go ahead and say, yes, I saw him do this to her.

(*Id*. at 82.)

To merit habeas corpus relief, prosecutorial misconduct must have infected the trial with unfairness so as to make the resulting conviction a denial of due process. *Greer v. Miller*, 483 U.S. 756, 765 (1987). In other words, the conduct must have rendered the trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 179-81 (1986). A trial will be deemed fundamentally unfair only in the most egregious situations and only if there is a reasonable

probability that the verdict might have been different had the trial been properly conducted. *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000); *Ortega v. McCotter*, 808 F.2d 406, 410-11 (5th Cir. 1987).

In this case, Petitioner has not shown that the prosecutor's remarks in voir dire constituted either persistent or pronounced misconduct. He has also not shown that the evidence was so insubstantial that, in probability, but for the remarks in voir dire, no conviction would have occurred. Petitioner's claims should be denied.

**6.    Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' decision to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 3rd day of October, 2005.

_____
**PAUL D. STICKNEY**
**UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO OBJECT</u>

The United States District Clerk shall serve a copy of these findings and recommendations on the parties. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings and recommendations must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings and recommendations to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. The failure to file such written objections to these proposed findings and recommendations shall bar that party from a *de novo* determination by the district court. *See Thomas v. Arn*, 474 U.S. 140 (1985). Additionally, the failure to file written objections to proposed findings and recommendations within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).